IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Myra L. Crutchfield, ) | |
| ) | Civil Action No. 2:12-1462-RMG-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| vs. ) | |
| ) | |
| Pfizer Inc., Kathy Spencer-Pike, Emily ) | |
| Carter, Elaine Shaw, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on the defendants' partial motions to dismiss and to strike [Doc. 12, 22], pursuant to Federal Rules of Civil Procedure 12. In her Complaint, the plaintiff alleges numerous federal and state claims. The defendants have moved to dismiss some of these claims as against certain of the defendants.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

This case arises out of the alleged unlawful termination of the plaintiff's employment by Defendant, Pfizer Inc. The plaintiff was an employee of Pfizer from, on or about June 1, 1984 through March 28, 2011, when she was terminated for misconduct. (Amend. Compl. at ¶ 11.) The plaintiff worked directly under Defendant Emily Carter and indirectly under Defendant Carter's supervisor, Kathy Spencer-Pike. *See id.* at ¶¶ 17, 19, 23.

In the Fall of 2007, the plaintiff was diagnosed with breast cancer. *Id.* at ¶¶ 14–16. The plaintiff alleges that, two years later, Defendant Carter presented the plaintiff with a

breast cancer "survivor" t-shirt at a Pfizer selling skills event in front of her colleagues and required the plaintiff to wear it. *Id.* at ¶¶18–20. She contends that this incident was a breach of confidence and invasion of privacy.

In March 2011, the plaintiff alleges to have learned that Pfizer was sending Lyrica samples to doctors who instructed Pfizer to refrain from sending the samples to them and that those samples were being improperly stored in the doctors' offices. *Id.* at ¶ 39. After checking with her co-workers, the plaintiff informed Defendant Carter that the Lyrica samples were being shipped despite the doctors' wishes and told the defendant that she believed the practice was unethical. *Id.* at ¶¶ 41–45. The plaintiff believes her employment was terminated, in part, for this conduct.

During this same period, the plaintiff saw a pain specialist for intense arm-pain; she alleges that the doctor instructed her to perform no lifting and to minimize activity for three days. *Id.* at ¶ 48. The plaintiff attempted to contact Defendant Carter for an accommodation but Carter allegedly never addressed the issue, requiring the plaintiff to "work through the pain" and to take a vacation day. *Id.* at ¶¶ 51–52. On or about March 21, 2011, Defendant Carter and Defendant Elaine Shaw, a Pfizer, Inc. Human Resources representative, met with the plaintiff and attacked her work performance and her "vacation" time. *Id.* at ¶¶ 53–54. The defendants informed the plaintiff of her termination on March 24, 2011, and she was officially terminated on March 28, 2011. *Id.* at ¶¶57–58.

The plaintiff alleges that in the termination of her employment she was also discriminated against on the basis of her age, disability, and sex.

## **APPLICABLE LAW**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). Such a motion should be granted when, accepting the facts set forth in the pleadings, the case can be decided as a matter of law. *Tollison v. B & J Machinery Co., Inc.*, 812 F. Supp. 618, 619

(D.S.C.1993). The standard is almost identical to the standard employed in considering a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." *Cont'l Cleaning Serv. v. United Parcel Serv., Inc.*, 1999 WL 1939249, at *1 (M.D.N.C.1999); *see also Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir.2002). In addition to the complaint, the factual allegations of the answer are taken as true, to the extent "they have not been denied or do not conflict with the complaint." *Pledger v. North Carolina Dep't of Health & Human Servs.*, 7 F. Supp.2d 705, 707 (E.D.N.C.1998).

Instructively, under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)).

**DISCUSSION**

In response to the defendants' motions, it appears that the plaintiff has consented to the dismissal of the following claims:

1. ADA, ADEA, and Title VII, as against the individual defendants;

2. Negligent supervision/retention and negligent training;

3. Intentional infliction of emotional distress, as against Defendant Pfizer;

4. Breach of contract, as against the individual defendants; and

5. Restitution, as against the individual defendants.

The parties, however, still dispute the following: (1) whether the plaintiff's claim for intentional infliction of emotional distress should be dismissed, as against the individual defendants; (2) whether the plaintiff's claim for wrongful termination in violation of public policy should be dismissed, as against all the defendants; (3) whether the claim for restitution should be dismissed, as against Defendant Pfizer; (4) whether the claim for breach of confidence/invasion of privacy should be dismissed; and (5) whether certain paragraphs in the Amended Complaint should be struck as irrelevant or otherwise improper under Rule 12(f).

The Court will address each claim in turn.

**I.     Intentional Infliction of Emotional Distress**

The defendants first contend that the plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provision of the South Carolina Workers' Compensation Act ("Act"). S.C. Code. Ann. § 42-1-540. That statute states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against

>    his employer, at common law or otherwise, on account of such
>    injury, loss of service or death.

*Id.* Additionally, "Every employer and employee . . . shall be presumed to have accepted the provisions of [the Act] respectively to pay and accept compensation for personal injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code § 42-1-310.

The plaintiff concedes that her claim for intentional infliction of emotional distress falls within the ambit of the Act, such that it is the exclusive remedy as against her employer. *See Loges v. Mack Trucks, Inc.*, 417 S.E.2d 538 (S.C.1992) ("[A]llegations of intentional infliction of emotional distress, assault and battery as these constitute personal injuries within the scope of the Act.") (*citing Powell v. Vulcan Materials Co.*, 384 S.E.2d 725 (S.C. 1989); *Thompson v. J.A. Jones Const. Co.*, 19 S.E.2d 226 (S.C. 1942). The plaintiff argues, however, that she means to sue only defendants Spencer-Pike, Carter, and Shaw in their individual capacities and, thus, the Act does not apply as any bar.

This cannot be a permissible view of the Act. Foundationally, the Act is intended to preclude an employee from maintaining a tort action against an employer where the employee sustains a work-related injury. *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004); *Tatum v. Med. Univ. of S.C.*, 346 S.C. 194, 552 S.E.2d 18 (2001). In so many cases, the work-related injury will necessarily involve the conduct of co-workers and other employees; that is how a business entity acts – through its employees. *See Palmer v. House of Blues Myrtle Beach Rest. Corp.*, 2006 WL 2708278 (D.S.C. Sept. 20, 2006) (dismissing negligent supervision cause of action because barred by the exclusivity provision of the South Carolina Workers' Compensation Act); *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700 (S.C. 1993) (stating that the Act provides exclusive remedy for employees who sustain work-related injury; claim of negligence for failure to exercise reasonable care in selection, retention, and supervision of co-employee is covered by the

5

Act); *Loges*, 417 S.E.2d 538 (involving intentional infliction of emotional distress and assault and battery); *see also Todd v. Federal Express Corp.*, 2010 WL 1294070, at *1 (D.S.C. March 29, 2010) (involving assault and battery).

Accordingly, South Carolina has expressly acknowledged, at least twice, that the immunity under the Act "is conferred not only on the direct employer **but also on co-employees**." *Posey v. Proper Mold & Engineering, Inc.,* 661 S.E.2d 395, 403 (S.C. Ct. App. 2008) (emphasis added); *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004). Were it any other way, the "exclusivity" provision would be made a kind of sham, for a plaintiff's ability to so routinely elect between remedies – this case in point. But, instead, "the exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act: the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee." *Edens*, 597 S.E.2d at 868.

As the defendants contend, "South Carolina case law is clear that only when the tortfeasor/coemployee is the alter ego of the employer may liability be had outside the ambit of the Act." *See Bryant v. INA Bearing Co.*, 1993 WL 540274, at *1 (4th Cir. 1993) (citing *Dickert*, 428 S.E. 2d 700, 701 (S.C. 1993)). The plaintiff has not alleged and cannot allege that any of the named individuals represent the "alter ego" of Pfizer, defined as a "dominant corporate owner[] [or] officer[]." *Dickert*, 428 S.E.2d at 701. The term does not include "supervisory employees." *Id.* All of the alleged individual defendants were either co-workers or in supervisory positions over the plaintiff and no more. (See Compl. ¶¶ 6, 8, 14, 44.)

As a final word, the scope of the Act is limited by the requirement that an injury must arise out of and in the course of employment. S.C. Code § 42-1-160. "In the course of employment" refers to the time, place and circumstances under which the accident occurs. *Eargle v. S.C. Electric & Gas Co.*, 32 S.E.2d 240 (1944). An injury "arises out of" one's

6

employment, therefore, not necessarily because employees were in the process of performing their job responsibilities, so to speak, when the accident occurred, but because the workplace enabled the injury. *See Loges*, 417 S.E.2d. at 540-41. The plaintiff does not argue specifically that her injury was not work-related, but, on some level, that is the necessary implication of her argument – that the individual defendants' conduct was so outrageous that it permissibly distinguishes their liability from that of Pfizer's. The Act and related cases do not allow for this distinction.

The plaintiff has requested opportunity to amend, were her claims denied. But, the Court cannot see how any chance to cure would be effective. The undersigned would not recommend it.

## II.     Wrongful Discharge in Violation of Public Policy

The defendant has next moved for dismissal of the plaintiff's claim that he was discharged wrongfully in violation of the public policy of the State of South Carolina. The plaintiff contends that her employment was terminated in part for having informed Defendant Pfizer of potential federal law violations associated with the sale of certain pharmaceuticals.

South Carolina recognizes the doctrine of employment at-will. *See Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923 (1999); *Shealy v. Fowler*, 182 S.C. 81, 188 S.E. 499 (1936). Under this doctrine, either party may terminate the employment contract at any time, for any reason, or no reason at all. *See Prescott*, 516 S.E.2d at 925; *Baril v. Aiken Reg'l Med. Ctrs.*, 573 S.E.2d 830 (S.C. Ct. App. 2002). South Carolina courts, however, have carved out exceptions. *See Small v. Springs Indus.*, Inc., 388 S.E.2d 808 (1990) (Small II ); *Davis v. Orangeburg-Calhoun Law Enforcement Comm'n*, 542 S.E.2d 755 (S.C. Ct. App. 2001).

One such exception arises when the discharge of an at-will employee constitutes a violation of a clear mandate of public policy. *See  Ludwick v. This Minute of Carolina, Inc.*,

337 S.E.2d 213, 214 (S.C. 1985); *see also Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000); *Barron v. Labor Finders of South Carolina*,682 S.E.2d 271, 274 (S.C. Ct. App. 2009) (emphasizing that Lawson limited claims of wrongful discharge in violation of public policy to those situations where an employee was asked to violate the law or where the termination violated criminal law). Although not definitively so, the exception has been mostly and narrowly available, typically, only "when an employer requires an employee to violate the law or the reason for the employee's termination was itself a violation of criminal law." *Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000); *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011). The Court has always been of the view, however, and not solely in light of the recent decision in *Barron*, that such were not the exclusive circumstances implicating the exception.

The defendant, here, starts by offering that the plaintiff has not alleged either that the defendant required her to violate the law or that the termination itself of her employment was a violation of criminal law. The plaintiff does not contend otherwise than to emphasize, simply, that the exception is broader than those two circumstances. *See Barron*, 713 S.E.2d at 615-16.

The defendants cite several decisions that approximate similar allegations to those at issue here. The defendant emphasizes *Barron* as rejecting that a plaintiff employee could state a claim for wrongful termination where she was allegedly terminated for making an internal complaint about unpaid wages. *See id.* at 636, 638-39. Similarly, regarding *Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 260-61 (2000), the defendants would suggest that the South Carolina Supreme Court held that the employee could not establish a claim for wrongful termination under the public policy exception where the employee alleged he was terminated in retaliation for reporting hiring policy violations under the Whistleblower statute. Lastly, defendants appeal to this Court's decision, in *Scarborough v. Lifepoint, Inc.*, 2011 U.S. Dist. LEXIS 144074, 14-15 (D.S.C. 2011), as precedent that the

8

mere violation of company policy is not sufficient, under any circumstance, to constitute a violation of a clear mandate of South Carolina public policy.

The problem with the defendants' proffer is that all three cases are distinguishable in meaningful ways from the present one. In *Barron*, the South Carolina Supreme Court never reached the issue of whether the plaintiff's complaints about unpaid wages constituted a public policy basis. Instead, the *Barron* court affirmed dismissal of the claim on evidentiary grounds that the plaintiff could not establish that she ever made a complaint or threatened to make a complaint pursuant to the applicable wage statute. *See Barron*, 713 S.E.2d at 638. In fact, the court stated expressly, "We do not foreclose the possibility that a claim for wrongful termination in violation of public policy may exist when an employee is terminated in retaliation for instituting a claim under the [Wage] Act." *Id.* at 639. The Court simply never reached the issue of whether retaliation for an employee complaining about or reporting statutory violations was against public policy.

Likewise, in *Lawson*, the claim was rejected, not because the Supreme Court had rejected the public policy basis as ineffective, but because the plaintiff had a statutory remedy for the wrongful discharge. *Lawson*, 532 S.E.2d at 261; *see Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (1992) (employee allegedly terminated in retaliation for filing complaint under Fair Labor Standards Act had existing statutory remedy for wrongful termination). And, lastly, this Court's own decision in *Scarborough* only concerned allegations that the plaintiff was forced to violate company policy, a plainly lesser expression of policy than the cause of action requires.

Truthfully, it is not some fault of the defendants to recite these authorities. They represent all that is available. Rather, it is the failing condition of South Carolina law to not offer any plain answer in this area. Precisely because it is an issue of law, charged to the court, as to whether a matter constitutes public policy, it is an unacceptable jurisprudential condition to leave these many and creative public policy challenges to the guesswork and

9

imagination of the judges before whom they arise. Other than the general admonition that employees may not be required to violate of the law, which is now clearly not the whole teaching, there is literally no guidance on how to analyze whether a matter constitutes "public policy" sufficient to support a claim.

That being said, the Court can delay at this point any final conclusion. The plaintiff identified no statutory or regulatory bases in her Complaint, which the defendant allegedly violated. In response, now, she raises the specter that, at least, the defendants may have encouraged violations of 21 CFR § 1301.72 and S.C. Code Regs. § 61-4.141. (Pl. Resp. at 9.) The plaintiff believes discovery will reveal even more. Traditionally, the Court might have been inclined to view this inability of the plaintiff, to be more specific, as precisely the reason to recommend dismissal of the claim. But, the undersigned's renewed perspective on this unsettled area weighs in favor of caution.

The Court, therefore, would recommend that the claim proceed. First, as stated, South Carolina does not unequivocally say that it should not. Second, with a clearer picture of the implicated statutory and regulatory provisions the Court can more perfectly apply applicable case law, including an assessment of whether statutory remedies exist for the same alleged conduct. The Court is comfortable that the recommendation does not greenlight an expedition in discovery fishing. It certainly means the defendants will be entitled to some more. But, the plaintiff has laid a colorable foundation in her Complaint that there existed specific and violative behavior and conduct. She alleges that an identified-by-name pharmaceutical was improperly handled, in violation of established law and regulation, and then distributed to physicians. (Amend. Compl. ¶¶ 39.) In other words, it is not a blind and generic accusation, lobbed simply for the chance to discover something more actual.

The plaintiff alleges that she complained internally about the noncompliance and notified physician clients and that as a result her employment was terminated. *Id.* ¶¶ 39-42,

132, 133. Even as the undersigned has some reservations, the ambiguities in the prevailing law plus an undeveloped record are enough for now.

## III.     Restitution

The defendants also seek dismissal of the plaintiff's restitution claim against Defendant Pfizer. The plaintiff contends that her "actions directly preserved and increased goodwill between Defendants' clients and Defendant Pfizer, providing Pfizer with monetary and nonmonetary benefits for which Plaintiff was uncompensated." (Amend. Compl. ¶ 138.) Restitution is a remedy designed to prevent unjust enrichment. *Stanley Smith & Sons v. Limestone College*, 283 S.C. 430, 435 n.1, 322 S.E.2d 474, 478 n.1 (Ct. App. 1984). To recover on a theory of restitution, the plaintiff must show (1) that she conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value. *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 581 S.E.2d 161, 167 (2003).

Critically, for the benefit to be considered nongratuitous it must either have been obtained "(1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment. It is not enough that the defendant has knowledge of the plaintiff's conduct; he must have induced the plaintiff to confer the benefit." *Niggel Associates, Inc. v. Polo's of North Myrtle Beach, Inc.*, 374 S.E.2d 507 (S.C. Ct. App.1988). The Amended Complaint readily fails this test. Indeed, the plaintiff would aver quite the opposite. According to the Amended Complaint, not only did the defendant Pfizer *not* request that the plaintiff communicate her concerns to Pfizer clients, she would contend that she was fired for precisely the same. (Amend. Compl. ¶¶ 132, 133.) Likewise, the Amended Complaint nowhere suggests that the defendant Pfizer knew the plaintiff expected to be compensated or that it otherwise

induced her to confer any such benefit. Again, to the contrary, the plaintiff's Complaint only suggests that the defendant perceived her activity as a detriment, to spurn and discourage, not a benefit, to induce or compensate. The Court does not see how a claim for restitution could ever lie.

**IV.     Invasion of Privacy and Breach of Confidence**

The plaintiff's Amended Complaint alleges claims for invasion of privacy and breach of confidence. The plaintiff contends that she was presented with a "Survivor" t-shirt at a breast cancer awareness event under circumstances that would have indicated to others that she had previously suffered breast cancer. She contends that this implicit disclosure of private medical information was a breach of confidence and an invasion of her privacy. The South Carolina Supreme Court has recognized a cause of action for breach of confidence where "[a] confidential relationship is breached if unauthorized disclosure is made to only one person not a party to the confidence . . . ." *Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126, 132 (S.C. 1999); *McCormick v. England*, 494 S.E.2d 431, 437 (S.C. Ct. App. 1997). There are three separate and distinct causes of action for invasion of privacy: (1) wrongful appropriation of personality; 2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs. *Id*. The plaintiff appears to raise a claim under the second of these, wrongful publicizing of private affairs.

The defendants have raised numerous arguments, including that the plaintiff, as a participant in an event of public or general interest, had no privacy interest. The Court, however, believes the two claims have been essentially pled. (Amend. Compl. ¶¶ 145-56.) And, while on their face the allegations do not sound in something shameful that is what the plaintiff has alleged the defendants to have intended. Although all of the defendants are alleged to have had association with the wrongful disclosure, only Defendant Carter is specifically identified as the presenter. *Compare id. with id.* ¶ 19. The Court, therefore, would recommend dismissal of this claim as against Defendants Kathy Spencer-Pike and

Elaine Shaw. There is no specific allegations as to them. At this early stage, however, the Court is reluctant to reach too far to narrow or reject the claim more. The defendants' arguments are easily reasserted on summary judgment after some discovery is taken.

Lastly, the Court would not recommend that any portion of the Complaint be struck as the defendants request.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendants' motion to dismiss [Doc. 12, 22] should be GRANTED in part and DENIED in part. Specifically, the plaintiff's claims for intentional infliction of emotional distress, negligent supervision/retention, negligent training, and restitution should be dismissed as to all defendants. The plaintiff's claims pursuant to the ADA, ADEA and Title VII and for breach of contract should be dismissed as against the individual defendants. The Court, however, would not recommend dismissal of the plaintiff's claim for wrongful discharge in violation of public policy or the plaintiff's claim for breach of confidence and invasion of privacy, except as to Defendants Kathy Spencer-Pike and Elaine Shaw. The Court would also not strike any paragraphs in the Amended Complaint.

                                                                        s/Bruce H. Hendricks
                                                                       United States Magistrate Judge

May 22, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).